UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| *JOAN ROE, MARY ROE and JOHN ROE,* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Cause No. 4:08-cv-01474 JCH |
| *ST. LOUIS UNIVERSITY, SIGMA TAU GAMMA FRATERNITY, INC., SIGMA TAU GAMMA EPSILON XI CHAPTER,* | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT SIGMA TAU GAMMA FRATERNITY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW defendant Sigma Tau Gamma Fraternity, Inc. (hereinafter referred to as "Sigma Tau"), by and through its attorneys, Sandberg Phoenix & von Gontard P.C., and submits the following memorandum of law in support its Motion for Summary Judgment [Doc. 106] pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7-4.01(E) and 26-3.02 of the Rules of the United States District Court for the Eastern District of Missouri:

### INTRODUCTION

Plaintiff's allegations relate to incidents which allegedly occurred while she was a student of St. Louis University.  *Plaintiff's First Amended Complaint [Doc. 25], incorporated by reference herein (hereinafter referred to as "First Amended Complaint"), ¶ 1.*  Plaintiff seeks damages against St. Louis University for a variety of alleged injuries under theories of negligence, Title XI – Deliberate Indifference, Title XI – Disparate Treatment, Intentional

Misrepresentation/False Promise, Negligent Misrepresentation/Deceptive Merchandising Practices, and Breach of Contract. *First Amended Complaint, ¶¶ 55-113.*

Plaintiff's allegations against Sigma Tau and its local affiliate, Sigma Tau Gamma Epsilon Xi Chapter ("Epsilon Xi Chapter), are limited to a single claim for negligence. *First Amended Complaint, ¶¶ 55-68.* Plaintiff alleges Sigma Tau and Epsilon Xi Chapter failed to properly supervise a Halloween party on October 27, 2006, where plaintiff was allegedly sexually assaulted by a man named Alexander DiFonzo and failed to implement appropriate prevention policies and procedures. *First Amended Complaint, ¶¶ 64-66.*

The party purportedly took place at an establishment known as the Ballroom, located at 3701 Lindell Boulevard in St. Louis, Missouri ("the premises"). *See redacted[1] excerpts of deposition transcript for Joan Roe dated August 4, 2009, attached to defendant's Statement of Uncontroverted Material Facts as Exhibit A and incorporated by reference herein, 220:24-221:2; 222:21-223:4; and St. Louis Metropolitan Police Incident Report No. CN 06-103091, attached hereto as Exhibit B and incorporated by reference herein.*

On October 27, 2006, Sigma Tau did not own, lease, rent, operate, possess, or otherwise have control over the premises. *See Affidavit of William P. Bernier, attached to defendant's Statement of Uncontroverted Material Facts as Exhibit C and incorporated by reference herein, ¶ 9.* Sigma Tau was not involved in any planning, preparation, organization, or decision making for any party on the premises on October 27, 2006. *Exhibit C, ¶ 10.* Sigma Tau did not provide any funding, staffing, or other resources or assistance for any party on the premises on October 27, 2006. *Exhibit C, ¶ 11.* Sigma Tau never assumed any responsibility for hosting or

---

[1] Plaintiff's personal information has been redacted from her deposition transcript to protect her identity.

2187642\1

supervising any party on the premises on October 27, 2006. *Exhibit C*, *¶ 12*. No officers or employees of Sigma Tau were present at any party on the premises on October 27, 2006. *Exhibit C*, *¶ 13*.

As of October 27, 2006, Sigma Tau had no knowledge of any prior violent crimes or sexual assaults at the premises. *Exhibit C*, *¶ 14*. As of October 27, 2006, Sigma Tau had no knowledge of, or information to suggest, any violent tendencies, aggressive behavior, or history of sexual assault for Alexander DiFonzo. *Exhibit C*, *¶ 15*.

Furthermore, Sigma Tau and Epsilon Xi Chapter are two separate entities. Sigma Tau is a corporation with headquarters located in Warrensburg, Missouri. *Exhibit C*, *¶ 4*. Sigma Tau functions as a resource and support services organization for local fraternity chapters, such as Epsilon Xi Chapter. *Exhibit C*, *¶¶ 5, 6*. Epsilon Xi Chapter is a separate corporation headquartered in St. Louis, Missouri, which operates independently from Sigma Tau. *Exhibit C*, *¶ 7*. Sigma Tau has no power to implement specific policies or procedures for members of Epsilon Xi Chapter. *Exhibit C*, *¶ 8*.

Plaintiff seeks damages against Sigma Tau solely for "extreme emotional pain, distress and anxiety." *First Amended Complaint*, *¶ 68*. In an effort to explore both the causation and damages elements of plaintiff's emotional distress claim, during plaintiff's deposition, defendants presented plaintiff with photographs from her Facebook page which depict plaintiff engaging underage drinking and using illegal drugs including marijuana.[2] *See redacted[3] excerpts*

---

[2] The photographic exhibits to plaintiff's deposition have been intentionally omitted as an attachment to this pleading to protect plaintiff's identity. These photographs will be made available to the Court during the hearing on Sigma Tau's Motion for Summary Judgment.

*of deposition transcript for Joan Roe dated August 4, 2009, attached to defendant's Statement of Uncontroverted Material Facts as* <u>*Exhibit A*</u> *and incorporated by reference herein,  28:20 –29:8; 29:11-23; 29:24 – 30:10; 31:2-5; 31:6-7; 31:8-10; 35:11 – 36:1; 41:18-22; 41:23 – 42:1; 42:2-5; 42:6-8; 42:21-24; 43:7-11; 44:9-11; 44:12-15; 45:6-11; 45:20 – 46:2; 47:24 – 48:4; 48:22 – 49:4; 49:24 – 50:10; 50:22 – 51:5; 51:10 – 52:2; 54:19-24; 55:6-14; 56:19-23; 64:4-12; 104:12-20; 121:10-17; 124:6-13; 124:20-22; 127:18-25; 134:13-17; 134:18-19; 134:20-22; 135:12-16; 150:24 – 151:8; 152:4-14; 210:2-9; 216:5-12; 269:12 – 270:4; 270:5-8; 271:12-19; 288:11 – 289:12; 305:12-14; 305:19-21; 305:22-23; 305:24-25; 306:1-2; 306:3-4; 306:5-7; 306:8-9; 306:10-12; and 309:5-13.*

Claiming Fifth Amendment privilege against self-incrimination, Plaintiff persistently refused to answer defendants' questions about her Facebook photographs or her apparently extensive history of alcohol and drug abuse.  *See* <u>*Exhibit A*</u>, *28:20 –29:8; 29:11-23; 29:24 – 30:10; 31:2-5; 31:6-7; 31:8-10; 35:11 – 36:1; 41:18-22; 41:23 – 42:1; 42:2-5; 42:6-8; 42:21-24; 43:7-11; 44:9-11; 44:12-15; 45:6-11; 45:20 – 46:2; 47:24 – 48:4; 48:22 – 49:4; 49:24 – 50:10; 50:22 – 51:5; 51:10 – 52:2; 54:19-24; 55:6-14; 56:19-23; 64:4-12; 104:12-20; 121:10-17; 124:6-13; 124:20-22; 127:18-25; 134:13-17; 134:18-19; 134:20-22; 135:12-16; 150:24 – 151:8; 152:4-14; 210:2-9; 216:5-12; 269:12 – 270:4; 270:5-8; 271:12-19; 288:11 – 289:12; 305:12-14; 305:19-21; 305:22-23; 305:24-25; 306:1-2; 306:3-4; 306:5-7; 306:8-9; 306:10-12; and 309:5-13.*

## CITATIONS AND ARGUMENT

## I.   STANDARD OF REVIEW.

---

[3] Plaintiff's personal information has been redacted from her deposition transcript to protect her identity.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005) (citing FED.R.CIV.P. 56(c)).  Summary Judgment is also appropriate on the issue of damages for emotional distress when plaintiff refuses to answer questions related to possible alternate causes or contributing factors to her alleged injuries.  Brutcher v. Jefferson County, Missouri, 2009 WL 1749373 (E.D. MO. June 19, 2009).

**II.    SUMMARY JUDGMENT IS APPROPRIATE BECAUSE SIGMA TAU DID NOT HAVE A DUTY TO PROTECT PLAINTIFF FROM CRIMINAL ACTS OF THIRD PARTIES.**

To succeed in a claim for negligence, a plaintiff in Missouri must establish, (1) the defendant had a duty to protect her from injury, (2) the defendant breached that duty, and (3) the breach was the proximate cause of her injury.  Ostrander v. Duggan, 341 F.3d 745, 749 (8th Cir. 2003).  "The existence of a duty is purely a question of law."  Knop v. Bi-State Development Agency of Missouri-Illinois Metropolitan Dist., 988 S.W.2d 586, 589 (Mo. App. E.D. 1999). "Generally, one person owes no duty to protect another from a deliberate criminal attack by a third person."  Id.  "Policy reasons for refusing to impose such a duty include:

> Judicial reluctance to tamper with a traditional, common law concept; the notion that a deliberate criminal act of a third person is the intervening cause of harm to another; the difficulty that often exists in determining the foreseeability of criminal acts; the vagueness of the standard the owner must meet; the economic consequences of imposing such a duty; and conflict with the public policy that protecting citizens is the government's duty rather than a duty of the private sector.

Id. (quoting Faheen, by and through Hebron v. City Parking Corp., 734 S.W.2d 270, 272 (Mo. App. 1987).

Despite this rule, plaintiff suggests a duty should be imposed in this case because on October 27, 2006, Sigma Tau and Epsilon Xi Chapter were allegedly "operating a social function" in which members of the fraternity were present and failed to properly supervise the party to prevent a sexual assault against plaintiff, who was an "invitee."

In a similar Missouri case, the plaintiff was allegedly subjected to sexual assault by a fraternity member in a house leased to eleven members of Delta Tau Delta ("DTD"). Ostrander, 341 F.3d at 747. She was invited to the house to assist in stuffing fraternity alumni newsletters into envelopes. Id. The Eighth Circuit affirmed the grant of summary judgment against the plaintiff, finding plaintiff failed to establish any duty on the part of the fraternity. Id. at 748-49. Specifically, the plaintiff failed to establish the fraternity owned, possessed, or controlled the premises; failed to establish her status as an invitee; and failed to establish the assault was foreseeable. Id. Any one of these deficiencies would have been dispositive. Id.

First, in support of the alleged possession, ownership, and control of the premises, plaintiff established the house was leased to eleven members of DTD, the house was located across the street from the fraternity, the fraternity's rules applied equally to members who resided outside the fraternity, and the fraternity considered using the house as an annex. Id. at 748. The Court found "[t]he evidence does not demonstrate DTD policed or in any way controlled the . . . premises, legally or factually." Id.

Second, the plaintiff failed to establish she was on the premises as a business invitee. Id. at 748-49. The evidence suggested the fraternity member had invited the plaintiff to the premises as a social guest, and plaintiff accepted the invitation for the purposes of socializing. Id. at 749. Stuffing newsletters in envelopes was incidental to a social purpose. Id. "The possessor's intention of offering the invitation determines the status of the visitor . . . The fact

6

that an invitation underlies a visit does not render the visitor an invitee for the purposes of premises liability law." Id.

Finally, the Court found even if the Ostrander plaintiff had raised genuine issues of material fact on the issues of possession and her entrant status, plaintiff's "duty" argument failed without evidence the assault was foreseeable. Id. "Generally, the owner or possessor of a premises is under no duty to protect an invitee from criminal acts of third persons, because such criminal acts are rarely foreseeable." Id. Specifically, the plaintiff failed to introduce evidence that DTD knew the fraternity member "was a violent individual or posed a particular threat to the female visitors arising from sexual misconduct at the . . . premises" or knew of sufficiently numerous and recent violent crimes at the premises to establish a likelihood of danger to invitees. Id.

Like Ostrander, plaintiff in the case at bar failed to establish Sigma Tau owned, possessed, or controlled the premises; failed to establish her status as an invitee; and failed to establish any evidence the assault was foreseeable. Id.

The party purportedly took place at an establishment known as the Ballroom, located at 3701 Lindell Boulevard in St. Louis, Missouri ("the premises"). *Exhibit A, 220:24-221:2; 222:21-223:4; and Exhibit B*. However, on October 27, 2006, Sigma Tau did not own, lease, rent, operate, possess, or otherwise have control over the premises. *Exhibit C, ¶ 9*. Sigma Tau was not involved in any planning, preparation, organization, or decision making for any party on the premises on October 27, 2006. *Exhibit C, ¶ 10*. Sigma Tau did not provide any funding, staffing, or other resources or assistance for any party on the premises on October 27, 2006. *Exhibit C, ¶ 11*. Sigma Tau never assumed any responsibility for hosting or supervising any

2187642\1

party on the premises on October 27, 2006. *Exhibit C*, ¶ *12*. No officers or employees of Sigma Tau were present at any party on the premises on October 27, 2006. *Exhibit C*, ¶ *13*.

As of October 27, 2006, Sigma Tau had no knowledge of any prior violent crimes or sexual assaults at the premises. *Exhibit C*, ¶ *14*. As of October 27, 2006, Sigma Tau had no knowledge of, or information to suggest, any violent tendencies, aggressive behavior, or history of sexual assault for Alexander DiFonzo. *Exhibit C*, ¶ *15*.

Furthermore, any acts, omissions, or knowledge on the part of Sigma Tau's local affiliate, Epsilon Xi Chapter, cannot be imputed to Sigma Tau. Sigma Tau is a corporation with headquarters located in Warrensburg, Missouri. *Exhibit C*, ¶ *4*. Sigma Tau functions as a resource and support services organization for local fraternity chapters, such as Epsilon Xi Chapter. *Exhibit C*, ¶¶ *5, 6*. Epsilon Xi Chapter is a separate corporation headquartered in St. Louis, Missouri, which operates independently from Sigma Tau. *Exhibit C*, ¶ *7*. Sigma Tau has no power to implement specific policies or procedures for members of Epsilon Xi Chapter. *Exhibit C*, ¶ *8*.

While not specifically addressed in Missouri, many sister courts have found the acts, omissions, and knowledge of a local fraternity chapter cannot be imputed to its national organization. For example, the United States District Court for the Eastern District of Pennsylvania acknowledged that a national fraternity must have some direct involvement or action to be held liable. Moyer v. Lehigh University, 1990 WL 76601 (E.D. Pa. 1990). In Moyer, the district court granted summary judgment to the national fraternity holding:

> [P]laintiff is required to produce evidence of more than imputed or constructive knowledge in order to establish the negligence of the national fraternity. . . [P]laintiff would have to produce evidence from which a jury could infer that the national fraternity had actual knowledge that minors were being served at the party at which the incident occurred. Thus, even if there were evidence in the record from which it could be inferred that, at times, minors had consumed

> alcoholic beverages at fraternity, that knowledge would be insufficient to sustain a finding of negligence in connection with the specific incident in this case.

*Id.* at *1 (emphasis added). Similarly, in <u>Jones v. Kappa Alpha Order, Inc.</u>, 730 So.2d 197 (Ala. App. 1997), the Alabama Court of Appeals affirmed the summary judgment as to the national organization.

> Regarding the national organization, it appears that Jones failed to present substantial evidence that it encouraged, authorized or ratified the alleged hazing. It is well settled that "in the absence of authorization or ratification by its members, an association is not liable for intentional torts by a member or members." <u>Rothman v. Gamma Alpha Chapter of Pi Kappa Alpha Fraternity</u>, 599 So.2d 9, 10 (Ala. 1992). Based on the foregoing, we conclude that the summary judgment was proper as to the national organization.

*Id.* at 202.

Again, in <u>Walker v. Phi Beta Sigma Fraternity</u>, the plaintiff sued the national organization, alleging that it had a duty to prevent his hazing. 706 So.2d 525 (La. App. 1997). The plaintiff argued that the national fraternity recognized its duty to prevent injury to new members through its rituals and its manual, even though the national fraternity's manual clearly prohibited hazing activities and there was evidence that hazing activity was purposely hidden from the national fraternity. <u>Id.</u> at 528. The trial court granted summary judgment to the national fraternity, and the appellate court affirmed, reasoning "the National Fraternity was not in a position to control the action of its chapters on a day-to-day basis." <u>Id.</u> at 529.

<u>See</u>, <u>also</u>, <u>Prime v. Beta Gamma Chapter of Pi Kappa Alpha</u>, 47 P.3d 402 (Kan. 2002) (although national organization was the owner of the property, it did not control the activities on the premises, and therefore, did not have a duty to protect plaintiff from excess alcohol consumption during fraternity initiation event); <u>Foster v. Purdue University Chapter, The Beta Mu of Beta Theta Pi</u>, 567 N.E.2d 865, 872 (Ind. App. 1991) (although national organization published an advisory pamphlet discouraging alcohol consumption and had the ability to revoke

the local chapter's charter, it did not have a duty to control alcohol consumption at local chapter); and <u>Alumni Assoc. v. Sullivan</u>, 572 A.2d 1209 (Pa. 1990) (national fraternity could not be held liable for property damages caused by student intoxicated at fraternity's local chapter without evidence it was involved in planning the party or providing the alcohol).

**III.     SUMMARY JUDGMENT IS APPROPRIATE BECAUSE PLAINTIFF REFUSES TO ANSWER QUESTIONS RELATED TO POSSIBLE ALTERNATE CAUSES OR CONTRIBUTING FACTORS TO HER ALLEGED INJURIES**

Courts of the United States have a recognized interest in the fair and equal treatment of litigants.  <u>Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa</u>, 482 U.S. 522, 565 (1987).  Accordingly, courts are granted broad discretionary powers to control discovery in order to ensure fairness to both parties.  <u>Id.</u> at 566.  Such discretionary powers include the right to impose sanctions when the fair examination of a deponent is impeded or frustrated.  FED. R. CIV. PRO. 30(d)(2).

Plaintiff in this case is seeking damages against Sigma Tau for emotional distress.  *First Amended Complaint, ¶ 68.*  Plaintiff alleges Sigma Tau was the cause of her emotional distress because it allegedly failed to properly supervise activities at a party and failed to implement policies and procedures to ensure her safety.  *First Amended Complaint, ¶¶ 64-66.*

However, during their investigation of this matter, defendants discovered evidence of other possible causes or contributing factors to plaintiff's emotional injuries.  Specifically, photographs and messages on plaintiff's Facebook website document a history of underage drinking and using a variety of illegal drugs including marijuana.  *See Exhibit A*.  At her deposition, plaintiff was repeatedly asked about her Facebook postings and her history of drug and alcohol use.  <u>Id.</u>  While such questioning aims to explore clearly relevant subject matter, plaintiff persistently refused to answer such questions, citing her Fifth Amendment privilege against self-incrimination.  *See Exhibit A,  28:20 –29:8; 29:11-23; 29:24 – 30:10; 31:2-5; 31:6-*

10

*7; 31:8-10; 35:11 – 36:1; 41:18-22; 41:23 – 42:1; 42:2-5; 42:6-8; 42:21-24; 43:7-11; 44:9-11; 44:12-15; 45:6-11; 45:20 – 46:2; 47:24 – 48:4; 48:22 – 49:4; 49:24 – 50:10; 50:22 – 51:5; 51:10 – 52:2; 54:19-24; 55:6-14; 56:19-23; 64:4-12; 104:12-20; 121:10-17; 124:6-13; 124:20-22; 127:18-25; 134:13-17; 134:18-19; 134:20-22; 135:12-16; 150:24 – 151:8; 152:4-14; 210:2-9; 216:5-12; 269:12 – 270:4; 270:5-8; 271:12-19; 288:11 – 289:12; 305:12-14; 305:19-21; 305:22-23; 305:24-25; 306:1-2; 306:3-4; 306:5-7; 306:8-9; 306:10-12; and 309:5-13.*

While plaintiff generally has the right against giving testimony that could implicate her in criminal activities, she should not be allowed to invoke the privilege as a shield to preclude defendants from exploring the basis for her alleged injuries.  Such allowance would fly in the face of the Court's interest in the fair and equal treatment of litigants.  See <u>Societe Nationale Industrielle Aerospatiale</u>, 482 U.S. at 565.

This Court recently faced the same issue in <u>Brutcher v. Jefferson County, Missouri</u>, 2009 WL 1749373 (E.D. MO. June 19, 2009).  In that case, plaintiff Brutcher filed suit against law enforcement personnel asserting various claims including excessive force and intentional infliction of emotional distress.  <u>Id.</u> at *1-2.  On each of these two counts, Brutcher sought damages for emotional distress.  <u>Id.</u> at *5, 7.  During Brutcher's deposition, the defendants sought testimony regarding a subsequent second arrest of plaintiff, which arguably could have impacted any emotional distress allegedly suffered by him.  <u>Id.</u>  at *5.  However, Brutcher refused to answer questions related to his second arrest, citing his Fifth Amendment privilege against self-incrimination.  <u>Id.</u> at *5, 7.

In deciding the case, this Court agreed that plaintiff could not use his Fifth Amendment rights as a shield to preclude defendants from exploring the basis of his injuries.  Specifically, the Court held, "Brutcher's refusal to answer questions regarding the second arrest impacted

11

Defendants' ability to explore the roots of his alleged emotional distress damages." Id. Accordingly, "Defendants' Motion for Summary judgment with respect to Brutcher's claim for emotional distress damages . . . will therefore be granted." Id.

As was the case in Brutcher, the plaintiff in this case is claiming the Sigma Tau's actions caused her emotional distress, yet adamantly refuses to answer questions related to other possible causes of, or contributing factors to, her injuries.  As it would be fundamentally unfair and significantly prejudice defendants to allow plaintiff to use her Fifth Amendment rights as a shield in this action, plaintiff should not be permitted to pursue her claims for emotional distress damages.  Accordingly, summary judgment should be entered in favor of Sigma Tau.

## CONCLUSION

For the foregoing reasons, defendant Sigma Tau Gamma Fraternity, Inc. requests entry of a summary judgment in favor of defendant Sigma Tau Gamma Fraternity, Inc. and against plaintiff as to all of plaintiff's claims against it, for its costs incurred herein, and for such other and further relief as the Court deems just and proper in the premises.

SANDBERG PHOENIX & von GONTARD P.C.


By:    /s/David Z. Hoffman_____
       Mary Anne Mellow, #3842
       David Z. Hoffman, #498740
       One City Centre, 15th Floor
       St. Louis, MO 63101-1880
       314-231-3332
       314-241-7604 (Fax)
       E-mail:  mmellow@sandbergphoenix.com
                dhoffman@sandbergphoenix.com

       *Attorneys for Defendants*
       *Sigma Tau Gamma Fraternity, Inc. and*
       Sigma Tau Gamma Epsilon Xi Chapter

2187642\1

**<u>Certificate of Service</u>**

I hereby certify that on this 18th day of November, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. David John Fraser
Law Offices of David J. Fraser
99 Frontier
Trabuco Canyon, CA  92679
E-Mail:   dfraserlaw@gmail.com

*Attorney for Plaintiff*

Neal F. Perryman
Jami L. Boyles
Lewis Rice
500 N. Broadway, Ste. 2000
St. Louis, MO  63102-2147
Email:  nperryman@lewisrice.com
          jboyles@lewisrice.com

*Attorneys for Defendant St. Louis University*


___/s/David Z. Hoffman_____

2187642\1