UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOAN ROE, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:08CV1474 JCH |
| ) | |
| SAINT LOUIS UNIVERSITY, et al., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Joan Roe's Motion for Ruling that Document is not Subject to the Protections of Federal Rule of Civil Procedure 26(b)(5)(B), filed December 23, 2009. (Doc. No. 118). The matter is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff Joan Roe was a student at Saint Louis University (the "University") in 2006. Shortly after she withdrew from the University, her parents requested a telephone conference with certain University employees familiar with Plaintiff, as well as a number of University officials previously unfamiliar with Plaintiff or her situation. The University agreed, and scheduled a telephone conference for February 5, 2007. Prior to the telephone conference, University Vice President for Student Development Kent Porterfield, with assistance from other employees, created a document captioned "Case Chronology (DRAFT) Joan Roe February 5, 2007" ("Draft Chronology"), for the purpose of facilitating discussions with University attorney Kenneth Fleischmann and other legal

---

[1] The Court's background section is taken from Defendant Saint Louis University's Memorandum in Opposition to Plaintiff's motion, filed December 30, 2009. (Doc. No. 121).

counsel within the University's Office of the General Counsel. Mr. Porterfield provided the Draft Chronology to Mr. Fleischmann.

After the February 5, 2007, conference call, but before the filing of the instant lawsuit, Plaintiff's counsel at the St. Louis law firm of Onder, Shelton, O'Leary, & Peterson, L.L.C., made a formal request for the production of Plaintiff's medical records. On September 15, 2008, Tracy James, Associate General Counsel for the University, responded to Plaintiff's counsel's request, and sent, via facsimile, a number of medical records. Unbeknownst to Ms. James, and despite her alleged prior review of the documents, the Draft Chronology from the legal file was sent to Plaintiff's counsel along with the medical records.

According to the University, it was unaware of the inadvertent disclosure until Plaintiff's current counsel began speaking of a chronology during a meet and confer on November 12, 2009. The University then requested that Plaintiff produce a copy of the chronology, and invoked the procedures and protections of Rule 26(b)(5)(B).

Plaintiff's counsel forwarded a copy of the Draft Chronology to the University on November 19, 2009. Upon receiving the document, the University immediately requested that all copies be destroyed, and otherwise treated in accordance with Rule 26(b)(5)(B). Although the University believed the matter had been resolved, Plaintiff's counsel attempted to mark and use the inadvertently produced document as an exhibit during a deposition of former University employee Marcie Boyer on December 8, 2009. Furthermore, Plaintiff's disclosed expert witness, Nancy Hogshead-Makar, referenced the document in her December 18, 2009, report.

As stated above, Plaintiff filed the instant motion on December 23, 2009. In her motion, Plaintiff requests a ruling that the Draft Chronology is not subject to the protections of Federal Rule of Civil Procedure 26(b)(5)(B).

# DISCUSSION

The Court assumes for purposes of the instant motion that the Draft Chronology originally was protected by the attorney-client privilege and/or work product doctrine. The Court thus turns to a discussion of whether the University waived the privilege or protection through its inadvertent disclosure.

The parties agree the applicable test to determine whether a waiver has occurred is set forth in <u>Gray v. Bicknell</u>, 86 F.3d 1472 (8th Cir. 1996). "This test requires the Court to examine five factors: '(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error.'" <u>Herndon v. U.S. Bancorp Asset Management, Inc.</u>, 2007 WL 781788 at *3 (E.D. Mo. Mar. 13, 2007), quoting <u>Gray</u>, 86 F.3d at 1484.

> If, after considering these factors, the court determines that a waiver has occurred, the documents lose their privilege. This test accounts for the errors that inevitably occur in modern, document-intensive litigation, but treats carelessness with privileged material as an indication of waiver.

<u>Id.</u> (internal quotations and citations omitted).

With respect to the first and second <u>Gray</u> factors, the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production and the number of inadvertent disclosures, the Court finds the University took insufficient precautions to prevent disclosure of the Draft Chronology. The three-page chronology was provided as part of a document production consisting of only 82 pages, and the University's sole explanation for the inadvertent disclosure was a supposed copying error committed after counsel completed her review. Further, the

University placed nothing on the face of the Draft Chronology to alert opposing counsel or others that it might be protected. Herndon, 2007 WL 781788 at *4.

With respect to the third factor, Plaintiff persuasively argues the extent of the disclosure was broad. For example, Plaintiff's counsel and his legal assistant in a related state-court case have had access to the Draft Chronology for over a year, and have provided the document to opposing counsel in that matter. Plaintiff's prior attorneys in this case have had access to and made use of the document, as have Plaintiff, her parents, and her current counsel. Finally, the Draft Chronology was provided to Plaintiff's Title IX expert, who allegedly relied on it in forming her opinion that the University failed to meet its obligations in its dealings with Plaintiff.

The Court next turns to factor four, the promptness of measures taken by the University to rectify the disclosure. "In evaluating promptness, at least one court has considered when the disclosing party discovered, or with reasonable diligence should have discovered, the inadvertent disclosure." Herndon, 2007 WL 781788 at *4, citing Kan. City Power & Light Co. v. Pittsburgh & Midway Coal Mining Co., 133 F.R.D. 171, 172 (D. Kan. 1989). Upon consideration, the Court finds this factor either is neutral, or weighs in favor of Plaintiff as well. Specifically, the Court notes that while the University insists it acted immediately upon first suspecting some version of the Draft Chronology inadvertently may have been produced, Plaintiff counters with the following testimony from the deposition of Plaintiff's mother, Mary Roe, taken August 5, 2009:

> Q (by Ms. Boyles)
>     Did he [Doug McGillicuddy] help you get the medical waiver?
> A (by Mary Roe)
>     No. Second conversation was in regards to a medical waiver after we called the coach, who was unavailable, and the coach's assistant who stepped in via phone conversation and had McGillicuddy return a--the phone call. McGillicuddy, no, was not agreeable to a medical waiver. Of course, we don't know our daughter's been raped, we're only saying her medical condition of her back makes it difficult for her to concentrate, to sit in class,

|   |   |
|---|---|
| | to sleep. And he knows about the rape and still doesn't help us get the medical withdrawal. |
| Q | How do you know what he knew at the time? |
| A | Because SLU's documents have a chronological listing of all the meetings, everything that happened with SLU.... |
| Q | Were you in that meeting? |
| A | No. That's via paperwork that's in the litigation. |
| Q | Something that you read in the course of this– |
| A | Yes. |
| Q | --litigation? |
| A | Supplied by SLU. |

(Doc. No. 124-6, P. 2). This discussion provides evidence counsel for the University with reasonable diligence should have discovered the inadvertent disclosure at least as early as August, 2009.

The Court finds the final factor, whether the overriding interest of justice would be served by relieving the party of its error, weighs in favor of neither party. In other words, while the University strenuously argues for its return and destruction in light of its alleged importance, Plaintiff counters with evidence the Draft Chronology goes to the crux of the assertions in the Complaint, and further already has been relied on extensively in the prosecution of her case.

In conclusion, because the Court finds any alleged privilege or protection was waived by the University's inadvertent disclosure of the Draft Chronology, Plaintiff's motion will be granted.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Joan Roe's Motion for Ruling that Document is not Subject to the Protections of Federal Rule of Civil Procedure 26(b)(5)(B) (Doc. No. 118) is **GRANTED**.

Dated this 14th day of January, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE