# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| JOAN ROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08CV1474 HEA |
| | ) | |
| SAINT LOUIS UNIVERSITY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant St. Louis University's

("Defendant" or "SLU") Motion for Summary Judgment [ECF No. 241].

Subsequently, Plaintiff Joan Roe ("Plaintiff" or "Roe") filed a Response to Motion for

Summary Judgment Under Federal Rule of Civil Procedure 56(d) [ECF No. 251] and

a Memorandum in Support [ECF No. 256], to which SLU replied ECF No. 264]. For

the reasons set forth below, Defendant SLU's Motion for Summary Judgment [ECF

No. 241] is granted, and Plaintiff's request for relief under Rule 56(d) [ECF No 251]

is denied.

## Factual Background[1]

Plaintiff's allegations relate to incidents which allegedly occurred while she

was a student at SLU. Plaintiff seeks damages against SLU for various alleged

---

[1]    The Court's recitation of the facts is drawn form Defendant SLU's statements of
material facts filed in conjunction with its motion for summary judgment.

injuries under theories of negligence, Title IX - Deliberate Indifference, Title IX - Disparate Treatment, Intentional Misrepresentation/False Promise, Negligent Misrepresentation/Deceptive Merchandising Practice, and Breach of Contract. These claims all stem from alleged mistreatment related to a purported back injury and an alleged rape.

### *General Facts*

Plaintiff was a student at SLU during the Fall 2006 semester, where she received a partial athletic scholarship to play for the SLU Intercollegiate Field Hockey team. On or about August 11, 2006, Plaintiff signed the University Field Hockey Team Rules to indicate that she received a copy of them, and that she understood their import and agreed to abide by them. Also on or about August 11, 2006, Plaintiff executed a Sports Medicine Authorization and Acknowledgment of Risk ("the Authorization form"), and, based on her deposition testimony, she understood the document when she signed it. At the time of signing Plaintiff was eighteen years old and had capacity to contract. The fourth paragraph of the Authorization form provided:

> I agree to release and hold harmless Saint Louis University, its employees, agents, representatives, coaches, physicians, athletic trainers, student-athletic trainers, and volunteers (collectively "Releases"), from any and all liability, actions, cause of action, debts. Claims or demands or any kind and mature (sic) whatsoever which may rise by or in connection with my participation in any

activities related to Saint Louis University intercollegiate athletic teams. I FURTHER UNDERSTAND AND AGREE THAT THIS RELEASE COVERS ANY LIABILITY, CLAIM AND ACTION CAUSED ENTIRELY OR IN PART BY ANY ACT, FAILURE TO ACT, MISTAKE, FAILURE TO SUPERVISE, OR NEGLIGENCE ON THE PART OF ANY OF THE RELEASES.

ECF No. 243, Exh. SS

In August 2006, Plaintiff was cited for violation of the University's alcohol policy. By midterm of the Fall 2006 semester, plaintiff had earned one "D," three "F's" and a "C-." As a result of Plaintiff's academic performance, Marcie Boyer ("Coach Boyer"), the coach of SLU's field hockey team, informed Plaintiff that she would not be traveling with the team to an away game in Richmond, Virginia, scheduled for the weekend of October 26 through 29, 2006. Boyer even arranged for a tutor to meet regularly with Plaintiff. Upon receiving Plaintiff's midterm grades, Peggy Dotson, Plaintiff's academic advisor at SLU, contacted Plaintiff's mother, notified her of Plaintiff's grades and discussed how Plaintiff could improve her academic standing. Additionally, Dotson provided Plaintiff's mother with contact information for Plaintiff's professors. Upon learning about Plaintiff's midterm grades, Mary Clark, the Coordinator of Academic Services in the University's Athletic Department, contacted Plaintiff and worked with her to attempt to develop a strategy to improve Plaintiff's academic standing. Due to her poor midterm grades, Plaintiff was suspended from the University's field hockey team and instructed that she had to

improve her grades and regularly attend classes if she wished to be academically eligible to participate on the team.

On or about November 15, 2006, Coach Boyer visited Plaintiff's Theology course to ensure that Plaintiff was in attendance. Boyer did not see Plaintiff in attendance and confirmed her absence with the course instructor, Professor Michael Farley. Coach Boyer addressed the absence issue with Plaintiff, however, Plaintiff claimed she was in attendance on November 15, 2006, but Boyer failed to see her because she was standing at the back of the classroom. Plaintiff later admitted that she lied to both Coach Boyer and Janet Oberle, the University's Assistant Athletic Director for NCAA Compliance and Student Services, regarding her Theology absence. Additionally, in early October, 2006, Plaintiff's Public Speaking instructor accused Roe of plagiarizing one of her assigned speeches. In light of Plaintiff's dishonesty regarding her attendance, and given her unimproved academic performance, she was dismissed from the field hockey team. In December 2006, Plaintiff and her parents submitted a request to the University for a medical withdrawal, which the University ultimately granted.

### *The Back Injury*

Plaintiff injured her back in late September of 2006. Based on her testimony, Plaintiff is unsure of whether the injury occurred during field hockey practice or

during weight training. Plaintiff claims that Defendant's athletic trainers were negligent in how they treated her following the injury. She claims that she suffered a further disc herniation in her lower back as a result of a particular weight training session in which she participated on October 26 and the University's failure to restrict her participation in such activities.

### *The Alleged Sexual Assault*

On or about October 27, 2006, while the field hockey team was in Richmond, Virginia for an away game, Plaintiff attended an off campus Halloween party. The party purportedly took place at an establishment known as the "Ballroom", located at 607 N. Grand Avenue in St. Louis, Missouri. The Ballroom is located inside the University Plaza Apartments, which are owned, managed and controlled by Kohner Properties, Inc.. The party was hosted by three tenants of the apartment, and attended by students and non-students. Plaintiff contends that alcohol and illegal substances were present and, that she was allegedly raped by Alexander DiFonzo, a fellow student at SLU at the time. Plaintiff has testified that she remembers going to the Halloween party, but she cannot remember what happened for the remainder of the night or many details about the alleged assault.        Days after the assault, Plaintiff had a conversation with two of the captains from the field hockey team and she

informed them that she believed she had been sexually assaulted.[2] The two captains encouraged Plaintiff to seek medical attention and to report the incident; however, at that time, Plaintiff indicated that she did not want to report the incident. On or about November 1, 2006, one of the captains to whom Plaintiff reported the incident informed Janet Oberle that Plaintiff told her that she believed she may have been sexually assaulted. Later that day, Oberle met face-to-face with Plaintiff to discuss the allegations. At that time, Plaintiff did not reveal the name of her alleged attacker, and she stated that she could not remember everything that happened on the night of the assault. At that time, Oberle contacted Claudia Charles, a counselor from the University's Student Health and Counseling Services. Oberle then escorted Plaintiff to counselor Charles' office to ensure that Plaintiff would attend counseling. Oberle also encouraged Plaintiff to contact the University's Department of Public Safety and the Office of Judicial Affairs, the office in charge of regulating student conduct on campus. Subsequent to Oberle's meeting with Plaintiff, she sent an email to Academic Counselor Clark, asking Clark to reach out to Plaintiff's parents. Furthermore, Oberle contacted the Department of Public Safety to inform them of Plaintiff's allegations. She did not reveal Plaintiff's identity; she indicated to them that Plaintiff may file a report.

---

[2]    As a privacy matter, the Court will not identify the students by name.

Prior to leaving SLU, Plaintiff did not file a report regarding the alleged sexual assault to Department of Public Safety or to the Office of Student Affairs. On or about December 19, 2006, Plaintiff's father contacted the University's Department of Public Safety to report his daughter's alleged assault. On or about that date, Larry Purvis of the Department of Public Safety began an investigation of the incident in light of Plaintiff's father's information. Purvis' investigation included efforts to locate other students that may have attended the party, and contacting other students, including a student that was known to be with Plaintiff on the night of the incident. Plaintiff's father also contacted St. Louis Metropolitan Police Department to report the alleged assault, who then conducted its own investigation. On or about January 26, 2007, Sarah Klucker, Student Conduct Officer in the Office of Student Affairs contacted Plaintiff, informed her on the University's adjudicative process and forwarded her an incident report. Neither Plaintiff nor her parents ever submitted an incident report to the University's Office of Student Conduct regarding the alleged sexual assault. No criminal charges were ever filed in conjunction with the alleged sexual assault.

## Plaintiff's Request for Rule 56(d) Relief

Federal Rule of Civil Procedure 56(d) provides relief when facts are unavailable to the nonmoving party. It states the following:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

    (1)    defer considering the motion or deny it;

    (2)    allow time to obtain affidavits or declarations or to take discover; or

    (3)    issue any other appropriate order.

Plaintiff contends that additional discovery is necessary to rebut Defendant's purported undisputed facts. The Court is perplexed by Plaintiff's request because this very same issue was previously taken up and ruled on. On February 23, 2010, Plaintiff filed its Motion for Discovery to Compel Production of Documents and Things [ECF No. 138], which requested production of the very same documents Plaintiff now seeks through her Rule 56(d) motion. Plaintiff filed the previous motion to compel [ECF No. 138] toward the end of the discovery period. Defendants opposed the motion and on March 16, 2010, the Honorable Judge Hamilton of this Court held a seventy-eight minute hearing on the matter.[3] *See* ECF No. 164. On August 17, 2010, Judge Hamilton denied the motion to compel. *See* ECF No. 175. The Court recognizes that the motion was denied without prejudice, however, Plaintiff has failed to present any new, significant reasons why the Court should be inclined to issue a different ruling than that of Judge Hamilton. The duration of the

---

[3]    On October 28, 2010, United States District Judge Jean C. Hamilton recused herself from this case and it was reassigned to the undersigned, United States District Judge Henry Edward Autrey. *See* ECF No. 181.

discovery period in this case was more than sufficient. Plaintiff and Defendant engaged in discovery from January 2009 through March 2010. Furthermore, the Court allowed the discovery deadline to be extended on four separate occasions. *See* ECF Nos. 43, 63, 85, 100. This litigation has been ongoing for a lengthy period of time, and the discovery period stretched out over several months. Based on these facts, the Court is entirely perplexed with the suggestion that either party needs time for further discovery. As such, Plaintiff has failed to show additional discovery is necessary here, and her request for relief under Rule 56(d) is denied.

## Summary Judgment Standard

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this

burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell* , 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding

in the plaintiff's favor.  *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005).  Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."  *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007).  "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial."  *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197, 3 (8th Cir. 2008).

### *Plaintiff's Negligence Claims*

Defendant contends that it is entitled to summary judgment on Plaintiff's negligence claims relating to her back injury because Plaintiff knowingly released her claims under the University's Sports Medicine Authorization Acknowledgment of

Risk Agreement and because, even if Plaintiff had viable negligence claims against the University, she would not be able to prove those claims at trial. Furthermore, Defendant contends that it is entitled to summary judgment with respect to Plaintiff's negligence claim for "failure to supervise" because Defendant had not duty to supervise or safeguard its students at the October 27, 2006 private, off-campus Halloween party.

Plaintiff's personal injury claim does not allege that Defendant SLU caused the injury; she alleges Defendant was negligent in treating and supervising Plaintiff after the injury occurred. Without referring to specific dates or occurrences, Plaintiff alleges that SLU, by and through its employees and agents, acted negligently by failing to properly train and supervise her weight-training. Further, she contends that SLU, by and through its employees and agents, failed to properly respond to her injury and acted negligently by having Plaintiff continue with her weight lifting and field hockey activities.

As discussed above on or about August 11, 2006, Plaintiff executed a Sports Medicine Authorization and Acknowledgment of Risk. Under Missouri law, a contract provision exempting one from liability for his negligence will never be implied but must be clearly and explicitly stated. *Gates v. Sells Rest Home, Inc.*, 57 S.W.3d 391, 397-398. Whether a contract or exculpatory clause is clear and explicit

or ambiguous and nonexculpatory is a matter of law, a matter for the court to decide

and not the jury. *Id.* at 397. To determine whether the exculpatory clause in the

Authorization was clear and explicit, we look to the language in question, which

reads as follows:

> I agree to release and hold harmless Saint Louis University, its employees,
> agents, representatives, coaches, physicians, athletic trainers, student-athletic
> trainers, and volunteers (collectively "Releasees"), from any and all liability,
> actions, cause of action, debts. . . .
>
> I FURTHER UNDERSTAND AND AGREE THAT THIS RELEASE
> COVERS ANY LIABILITY, CLAIM AND ACTION CAUSED ENTIRELY
> OR IN PART BY ANY ACT, FAILURE TO ACT, MISTAKE, FAILURE TO
> SUPERVISE, OR NEGLIGENCE ON THE PART OF ANY OF THE
> RELEASES.
>
> ECF No. 243, Exh. SS.

There is no question that the language above is clear and explicit. It

unambiguously releases Defendant SLU from any and all liability, actions, cause of

action, debts. Furthermore, it unequivocally states that Plaintiff understands and

agrees to release any negligence on the part of Defendant. Not only does the

Authorization state that Plaintiff understood the clear and explicit language, but

Plaintiff testified that she fully understood the document upon signing it. *See* ECF

No.244, Joan Roe Dep. I 64:17-65:9. As such, Plaintiff's signature on the

Authorization, and her admitted understanding of its significance before signing it, releases Defendant from any claims Plaintiff may seek.

Plaintiff's negligence claim also arises out of Defendant's alleged failure to supervise and ensure safety at the off-campus Halloween party where Plaintiff was allegedly sexually assaulted. To prevail on a negligent failure to protect claim against Defendant, Plaintiff must show that (1) Defendant had a duty to protect Plaintiff; (2) it breached that duty; and (3) the breach caused Plaintiff's injuries. *Johnston v. Warren County Fair Ass'n, Inc.*, 110 F.3d 36, 38 (8th Cir. 1997). In analyzing Plaintiff's negligence theory under this framework, Plaintiff's claim cannot survive scrutiny past the first element: whether SLU has a duty to protect Plaintiff.

Defendants draw the Courts attention to *Freeman v. Busch,* 349 F.3d 582 (8th Cir.2003). In that case, an invited guest at a party in the college dormitory became inebriated, passed out, and was allegedly sexually assaulted. *Id.* The plaintiff in that case filed tort claims against the students who hosted the party and the college. Even though the case involved a non-student plaintiff, the Eighth Circuit Court of Appeals held that "since the late 1970s, the general rule is that no special relationship exists between a college and its *own* students because a college is not an insurer of the safety of its students." *Id.* at 587 (emphasis in original). Relying on this well-settled rule, Defendant SLU owed no duty to supervise and ensure Plaintiff's safety at the

private, off-campus party that took place on October 27, 2006. It is undisputed that the property at which the alleged sexual assault took place is owned by Kohner Properties, Inc., a third-party that has no affiliation with SLU. To require SLU to act as Plaintiff's custodian here would require the Court to create a special relationship between a college and a student who attends an off campus party–and it would result in a "broad and unprecedented expansion of duty" under *Restatement (Second) of Torts* § 314A. *Freeman*, 349 F.3d 582(8th Cir.2003). As such, Plaintiff's Defendant SLU is entitled to summary judgment with regard to Plaintiff's Negligence claim.

### *Plaintiff's Deliberate Indifference Claims*

Plaintiff alleges that since at least 2001, SLU has had actual knowledge, and been systematically and deliberately indifferent to the fact that SLU was not accurately tracking the number of sexual assaults of female students reported to various agents of the University. Plaintiff contends that Defendant was not taking effective steps to reduce the number of assaults and failed to put in place accurate mechanisms for reporting such assaults and taking steps to reduce them. Specifically, Plaintiff contends that SLU acted with deliberate indifference to the October 27, 2006 incident. Additionally, Plaintiff alleges that Defendant's actual knowledge of, and deliberate indifference to, sexual assault was so severe, pervasive and objectively offensive that it deprived Plaintiff of access to educational opportunities and benefits

in violation of Title IX. Defendant claims that it is entitled to summary judgment because Plaintiff has not shown, and cannot show, that SLU's response to the alleged assault was deliberately indifferent or that the alleged incident occurred under its control.

Under Title IX, 20 U.S.C. § 1681, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." For a university to incur liability under Title IX, "it must be (1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." *Ostrander v. Duggan,* 341 F.3d745, 750 (8th Cir.2003) (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 534 U.S. 274, 290-291 (1998)). Sexual harassment and sexual abuse clearly constitutes as discrimination under Title IX. *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 75 (1992); however, a university will only be "liable for situations in which it 'exercises substantial control over both the harasser and the context in which the known harassment occurs.'" *Ostrander*, 341 F.3d at 750 (quoting *Davis,* 526 U.S. at 645). The university's deliberate indifference "must either directly cause the abuse to occur or make students vulnerable to such abuse, and that abuse 'must take place in a context subject to the [university's] control.'"

Under *Ostrander,* Plaintiff must demonstrate that SLU's response to the alleged sexual assault was "clearly unreasonable in light of all known circumstances such that she was denied equal access to educational opportunities." *Id.* The uncontested facts presented above do not support the contention that SLU's handling of the situation was clearly unreasonable.

As stated above, the first time any University representative heard of the event was on November 1, 2006 when one of Plaintiff's teammates informed Janet Oberle, the University's Assistant Athletic Director for NCAA Compliance and Student Services, of the incident. Immediately upon receiving this information, Oberle met face-to-face with Plaintiff and addressed the issue. At this time, Plaintiff refused to reveal the name of the alleged attacker.[4] Immediately following Oberle and Plaintiff's meeting, Oberle contacted Claudia Charles, a counselor from the University's Health and Counseling Services. Oberle then escorted Plaintiff to Charles' office to make sure Plaintiff met with the counselor. Oberle also encouraged Plaintiff to inform her parents of the situation and contact SLU's Department of Public Safety and the Office of Judicial Affairs. Additionally, Oberle emailed Plaintiff's Academic Counselor, Mary Clark asking her to contact Plaintiff's parents to inform them about the incident.

---

[4]     At this time, Plaintiff knew the identity of the alleged attacker, however, she told Oberle and Charles that she could not identify him.

Additionally, upon leaving SLU, Plaintiff still had not filed a report regarding the alleged assault with the Department of Public Safety or to the Office of Student Affairs. Once Plaintiff's father informed Larry Purvis of the Department of Public Safety about the incident, Purvis immediately launched an investigation and subsequently assisted the St. Louis Metropolitan Police Department with its investigation. Furthermore, on January 26, 2007, Sarah Klucker, a University Student Conduct Officer from the Office of Student Affairs, contacted Plaintiff and educated her on the University's adjudicated process.

Based on these uncontested facts, Defendant SLU's response to the alleged sexual assault was clearly reasonable in light of all known circumstances. Despite only having the limited information Plaintiff provided, SLU responded to her very serious alleged assault in a wholly adequate fashion. Plaintiff's suggestion that SLU's response was deliberately indifferent is not well taken.

Assuming *in arguendo* that Plaintiff could prove that SLU acted with deliberate indifference to a known act of discrimination, Plaintiff still fails to establish a basis in the record, or otherwise prove the third element of the deliberate indifference test: that the act occurred under SLU's control. The Ballroom–the site in which the alleged incident occurred– was located inside the University Plaza Apartments, which are owned, managed and controlled by Kohner Properties, Inc..

Plaintiff does not dispute this fact. Because the alleged incident occurred at a private, off-campus location it cannot be said that SLU "exercise[d] substantial control over both the harasser and the context in which the known harassment occurs.'" *Ostrander*, 341 F.3d at 750 (quoting *Davis,* 526 U.S. at 645). As such, Plaintiff fails to meet two of the three essential elements of her Title IX - Deliberate Indifference claim.

Plaintiff's contention that the University failed to accurately track the number of sexual assaults among its student body also lacks merit. Plaintiff has failed to "substantiate [her] allegations with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy." *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995). She merely offers conclusory statements unsupported by any specific facts. As such, Plaintiff cannot show that Defendant SLU acted deliberately indifferent toward knowledge of a history of on-campus sexual assaults, and her claim fails.

### Plaintiff's Disparate Treatment

Plaintiff alleges that Defendant SLU violated Title IX by failing to supervise her athletic training in an equal manner in which Defendant treats its male student athletes. Further, she contends that Defendant SLU failed to provide medical care and "educational follow up" it provides to its male athletes. Disparate treatment refers to

actions that treat similarly situated persons differently on the basis of a prohibited classification; here, the prohibited classification is sex. United States Department of Justice, *Title IX of the Education Amendments of 1972 - Title IX Legal Manual* http://www.justice.gov/crt/about/cor/coord/ixlegal.php. Courts have regularly applied Title VII principles in the analysis of Title IX. *Shuford v. Alabama State Bd. of Educ.*, 968 F.Supp.1486, 1503-1504 (11th Cir. 1997). Pursuant to Title VII and Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(1).

With this structural backdrop, the issue before the Court is whether Defendant SLU's actions excluded Plaintiff from participation in, denied her the benefits of or subjected her to discrimination at SLU. Plaintiff has not provided any specific SLU policy that treats female student-athletes any different from the male student-athletes. Rather, Plaintiff merely offers conclusory statements unsupported by any specific facts. Plaintiff's failure to submit any evidence of male student-athletes being treated differently than female student-athletes is consistent with her deposition testimony, in which she stated that she did not have any firsthand knowledge of how male student athletes were treated in connection with weight training. ECF No. 244, Exh. I, Jane

Roe Dep. at 110:5-17. Plaintiff also testified that she did not know about how SLU reacted to complaints of injury by male athletes. Plaintiff's lack of knowledge on this subject echos its pleadings, as she had not offered any evidence of disparate treatment under Title IX. Due to Plaintiff's failure to show that SLU treated similarly situated persons differently on the basis of gender, her disparate treatment claim fails. As such, Defendant SLU is entitled to summary judgment on this claim.

### *Plaintiff's Intentional Misrepresentation / False Promise* & *Negligent Misrepresentation / Deceptive Merchandising Practices Claims*

Defendant contends that Plaintiff's Intentional Misrepresentation / False Promise and Negligent Misrepresentation / Deceptive Merchandising Practices claims fail in light of the doctrine of educational malpractice. Plaintiff alleges that Defendant misrepresented to Plaintiff that she would be training in SLU's state of the art physical training program under proper supervision, using safe, practical exercises, techniques and equipment. Further, Plaintiff alleges that as an athlete, SLU misrepresented when it said she would receive medical care from some of the nation's top specialists. Additionally, Plaintiff contends that SLU misrepresented to her that there would be a high emphasis on her holistic well-being. And, finally, that Plaintiff's parents would be apprised of all developments affecting her standing at SLU. Plaintiff contends that SLU's failure to keep these promises caused her great damage in the form of serious injury, extreme emotional distress, and loss of

academic standing. Plaintiff alleges that her parents also suffered extreme emotional distress, and economic damages.

"In educational malpractice cases, a plaintiff sues his or her academic institution for tortiously failing to provide adequate educational services." *Dallas Airmotive, Inc. v. FlightSafety Intern., Inc.,* 277 S.W.3d 696, 700 (Mo.Ct.App.2008). (quoting *Vogel v. Maimonides Acad. of W.Conn., Inc.,* 58 Conn.App. 624, n. 7 (2000). "Missouri, along with most other jurisdictions that have considered the issue, has found that educational malpractice claims are not cognizable because there is no duty." *Id.* at 699. There are four general grounds courts cite in refusing to recognize educational malpractice claims:

> (1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will "embroil the courts into overseeing the day-to-day operations of schools."

*Id.* at 701. (quoting *Page v. Klein Tools, Inc.,* 610 N.W.2d 900, 903 (Mich.2000))

Generally, an educational malpractice claim requires " 'a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies that enter into the consideration of whether the method of instruction and choice of [teaching aids] was appropriate, or preferable.' " *Id*. at 700 (quoting *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 472 (Minn.Ct.App.1999)) (alteration in

original); *See also Blake v. Career Educ. Corp.*, 2009 WL 2567011 (8th Cir.2009).

At the same time, "courts have recognized claims by students for breach of contract, fraud, or other intentional wrongdoing that allege a private or public educational institution has failed to provide *specifically promised educational services.*" *Alsides*, 592 N.W.2d at 472 (emphasis in original). Defendant contends that Plaintiff's attempt to cloak these theories as claims for intentional or negligent misrepresentation, violation of the Missouri Merchandising Practices Act and breach of contract are merely ways to contravene the educational malpractice doctrine. Such a practice precludes an educational malpractice claim. *Christensen v. Normal Sch.,* 790 S.2d 252, 256 (Ala, 2001).

In order to determine if Plaintiff's misrepresentation claims are in fact educational malpractice claims in disguise, the Court must examine various representations that SLU made to Plaintiff, which she alleges turned out to be false. *Blake,* 2009 WL 1567011 *2.  In order for Plaintiff's claims to avoid being barred under the doctrine of educational malpractice, the Court's examination of the truthfulness of the individual representations must not involve "inquiry into the nuances of educational processes and theories." *Id.* *3 (quoting *Alsides*, 592 N.W.2d at 472).

First, Plaintiffs allege that Defendant intentionally misrepresented to Plaintiff that she would be training in SLU's state of the art physical training program under proper supervision, using safe, practical exercises, techniques and equipment. In examining the truthfulness of these representations, it would require the Court to inquire into the nuances of what should be determined "state of the art" physical training program in relation to every university throughout the country. Thus, Plaintiff's claim with regard to state of the art facilities is barred under the educational malpractice doctrine.[5]

Next, Plaintiff alleges that SLU intentionally misrepresented, or falsely promised, when it said she would receive medical care from some of the nation's top specialists. Much like the state of the art claim, in examining the truthfulness of these representations, it would require the Court to inquire into the nuances of educational processes and theories as to how to define and quantify some of the nation's "top specialists." Such a term is vague; it is not a specifically promised educational service. *See Alsides*, 592 N.W.2d at 472.

Next, Plaintiff alleges that SLU misrepresented to her a that at SLU, a Jesuit institution, there would be a high emphasis on her holistic well-being. This claim is

---

[5]     Assuming *in arguendo* that this claim was not barred by the educational malpractice doctrine, it would still fail under a negligent misrepresentation analysis. Plaintiff has produced no evidence showing that a) the statement was false, and b) that  SLU knew the falsity of its statement at the time it was conveyed. *See Herber v. Shell Oil Co.*, 744 S.W. 2d 441, 443 (Mo. banc 1988); See also MAI 23.05 (2010).

also barred by the educational malpractice doctrine because to analyze the truthfulness of this statement would require a "review of a myriad of education and pedagogical factors, as well as administrative polices that enter into the method of instruction and choice of teaching aids." *Blake*, 2009 WL 2567011 *2. To require the Court to inquire into the nuances of the Jesuit institution's concept of "holistic well-being" would contravene the education malpractice doctrine.

Plaintiff's contention that SLU misrepresented that it would keep Plaintiff's parents informed of developments that affected her standing at SLU also fails; however, it fails as a misrepresentation claim, not under the education malpractice doctrine. Under Missouri law, to support a claim of negligent misrepresentation by way of fraud, Plaintiff must present evidence of a: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of the truth; (5) the speaker's intent that the representation would be acted on; (6) the hearer's ignorance of the falsity of the misrepresentation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on the representation; and (9) the hearer consequent and proximate injury. *See Herber v. Shell Oil Co.,* 744 S.W. 2d 441, 443 (Mo. banc 1988); *See also* MAI 23.05 (2010). Plaintiff has failed to produce any proper evidence that would satisfy a negligent or intentional misrepresentation claim. She merely concludes that her parents were not notified of

developments that affected her standing at SLU. Specifically, Plaintiff has failed to prove the falsity of SLU's promise to inform her parents regarding her standing at SLU and SLU's knowledge of the alleged falsity of the alleged promise at the time it was communicated. As outlined above in the *General Facts,* upon receiving Plaintiff's midterm grades, Plaintiff's academic advisor contacted Plaintiff's mother, notified her of Plaintiff's grades and discussed how Plaintiff could improve her academic standing at SLU. Additionally, the advisor provided Plaintiff's mother with contact information for Plaintiff's professors. Plaintiff has failed to produce evidence that contradicts these facts. As such, she cannot prove the essential elements that constitute negligent misrepresentation and her claim fails.

### *Plaintiff's Breach of Contract Claim*

Lastly, Defendant SLU moves for summary judgment on Plaintiff's breach of contract claim. In Plaintiff's Amended Complaint, she alleges that SLU breached "various agreements with the University, including but not limited to a National Letter of Intent, [signed] on February 9, 2006, and a description of the field hockey requirements, signed on August 11, 2006." Plaintiff has not provided any detail regarding which specific terms Defendant allegedly breached. Assuming Plaintiff was able to provide sufficient facts to support her claim, it would still fail. Policy manuals and NCAA guidelines documents do not constitute a contract. *Guiliani v. Duke*

*University,* 2009 WL 1408869 at *3-4. As such, Defendant is entitled to summary judgment on the breach of contract claim.

<u>Conclusion</u>

For the reasons set forth above, Plaintiff has failed to show additional discovery is necessary here, and her request for relief under Rule 56(d) is denied. Furthermore, Defendant has shown that no genuine issues of material fact exist regarding Plaintiff's negligence, disparate treatment, deliberate indifference, intentional misrepresentation / false promise,  negligent misrepresentation / deceptive merchandising practices and breach of contract claims. Plaintiff has also failed to rebut Defendant's arguments, therefore, Defendant is entitled to summary judgment. As such, Defendant SLU is entitled to summary judgment on all of Plaintiff's claims.

**IT IS HEREBY ORDERED** that  Defendant St. Louis University's Motion for Summary Judgment [ECF No. 241] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Jane Roe's request for relief under Federal Rule of Civil Procedure 56(d) [ECF No. 251] is **DENIED.**

Dated this 31st day of December, 2012.

_____
   HENRY EDWARD AUTREY
   UNITED STATES DISTRICT JUDGE